1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10    BYRON L. SCOTT,

11              Plaintiff,                    No. CIV S-04-2586 LKK GGH P

12         vs.

13    CALIFORNIA SUPREME COURT, et al.,

14              Defendants.               FINDINGS & RECOMMENDATIONS

15    _____/

16    I. Introduction

17              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18    42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA). This

19    action is proceeding on the original complaint filed December 6, 2004. Plaintiff alleges that

20    defendant Warden Runnels violated his First Amendment rights and RLUIPA by denying his

21    request to change his name.[1]

22              Pending before the court are cross-motions for summary judgment. After

23    carefully considering the record, the court recommends that plaintiff's motion be denied and

24    defendant's motion be granted.

25    _____

26         [1] On December 20, 2004, the court dismissed the claims against defendant George,
      Scotland, Bradbury and Wagner.

II.  Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its

1  contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

2  106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

3  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

4  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

5  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

6  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

7  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

8       In the endeavor to establish the existence of a factual dispute, the opposing party

9  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

10  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

11  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

12  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

13  genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

14  56(e) advisory committee's note on 1963 amendments).

15       In resolving the summary judgment motion, the court examines the pleadings,

16  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

17  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

18  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

19  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

20  at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

21  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

22  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

23  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

24  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

25  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

26  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

1          On March 25, 2005, the court advised plaintiff of the requirements for opposing a

2   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3   F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

4   1988).

5   III.  Discussion

6          A.  Undisputed Facts

7          Plaintiff's religion is Hebrew-Israelite.  Complaint, p. 6.

8          The procedures by which inmates may obtain name changes are contained in Cal.

9   Code Regs. tit. 15, § 3294.5 which provides, in relevant part,

10          (a) All inmate or parolee requests for a legal name change shall initially be
            reviewed by the Warden or Regional Parole Administrator who shall either
11          recommend approval for a legal name change or deny the request for a legal name
            change.
12
13          (b) If the request is denied, the Warden or Regional Parole Administrator shall
            respond to the inmate or parolee in writing with the reasons for denial.  A copy of
14          the denial shall be placed in the miscellaneous section of the inmate/parolee's
            central file.
15          (c) If the Warden finds reasons that exist to warrant an inmate's request for a
            name change, then the Warden shall forward the request to the Institutions
16          Division Regional Administrator, along with a memorandum listing the reasons
            for recommending approval.  A copy of the memorandum shall be placed in the
17          miscellaneous section of the inmate's central file.

18          *****

19          (e) If the Institutions Division Regional Administrator or the Assistant Deputy
            Director, P & CSD, agrees with the recommendation to approve the request for a
20          name change of an inmate or parolee, a letter shall be forwarded to the court
            explaining why the Department is recommending approval for a name change,
21          along with the inmate/parolee's request.  A copy of the letter shall be placed in the
            miscellaneous section of the inmate/parolee's central file.
22
            (f) If the Institutions Division Regional Administrator or the Assistant Deputy
23          Director, P & CSD, denies the request for a name change of an inmate or parolee,
            a letter shall be forwarded to the inmate or parolee with the reasons for denial.  A
24          copy of the letter shall be placed in the miscellaneous section of the
            inmate/parolee's central filed.
25
            (g) Upon receiving final approval from the court with the ordered name change
26          and receiving departmental approval, the Correctional Case Records Manager

                                              4

shall notify the facility mailroom and visiting room of the name change if the offender is incarcerated; or shall notify the agent of record if the offender is on parole. The court order shall be placed in the miscellaneous section of the inmate/parolee's central file, along with other documents related to the request for a name change.

(h) The mailroom and visiting room staff of the facility shall update their records to reflect the additional name of the inmate.

(i) The original commitment name of the inmate or parolee shall remain on all departmental records and shall continue to be used on all departmental records.

*****

(l) If the court ordered name change is received without departmental approval, this clearly indicates that the inmate/parolee has not followed proper procedure to legally change his/her name. In this case, the Warden or Regional Parole Administrator shall notify the issuing court in writing that the name change cannot legally be changed without the Director's approval pursuant to the Code of Civil Procedure, Section 1279.5. A copy of the letter shall be placed in the miscellaneous section of the inmate/parolee's central and a copy shall be provided to the inmate/parolee.

Cal. Code Civ. Pro. § 1279.5(b) provides that no person imprisoned in the state prison and under the jurisdiction of the Director of Corrections shall be allowed to file an application for change of name pursuant to Section 1276 except as permitted at the discretion of the Director of Corrections.

On November 5, 2003, plaintiff submitted a form entitled "Inmate Request for Interview" addressed to the Warden. Complaint, Exhibit C1. This request stated,

Shalouem! Under Title 15, sec. 3294.5, I respectfully like to request for a name change, for religious and cultural reasons. This might not be grounds based on your logic to grant such a request, but it is important to me.

Id.

On November 18, 2003, Correctional Counselor Cain prepared a response to this request stating,

/////

/////

/////

5

1              If you are changing your name legally through the court system as noted in CCR
2              Title 15 3294.5(G) you may proceed.  Please note that per CCR Title 15 3294.5(I)
            your name will remain the same on all departmental records.

3  Id.

4          On January 6, 2004, plaintiff filed an informal level administrative appeal (602)

5  requesting that his name be changed to Yahyl Yigdalyah Hawkins.  Complaint, Exhibit A.  In

6  this appeal, plaintiff stated that he had submitted a request for a name change to the Warden but

7  it was forwarded to Correctional Counselor Cain.  Id.  On January 8, 2004, the appeal was

8  returned with the notation, "In order to receive a legal name change, you need to go through the

9  court.  This is outside the jurisdiction of the CDC."  Complaint, Exhibit 1A.

10          On April 4, 2004, plaintiff submitted a petition for a name change to the Lassen

11  County Superior Court.  Complaint, Exhibit B.  Plaintiff requested that his name be changed to

12  Yahyl Yigdalyah Hawkins.   Id.  On April 7, 2004, the petition was returned to plaintiff with a

13  form entitled "Notice of Return."  Complaint, Exhibit B1.  This form stated that the petition was

14  being returned for the following reasons:

15              Civil case cover sheet not date, petition box # 4 not marked, decl. on page 2 not
            dated [sic] you have a proof of service filled out by you & you cannot serve [sic]
16              you are a party to this action and secondly the judge must sign the order to show
            cause before it can be served, 3rdly a person incarcerated cannot have his name
17              change without the department of corrections approval.

18  Complaint, Exhibit B1.

19          On April 12, 2004, plaintiff resubmitted his petition for name change to the

20  Lassen County Superior Court which included his November 5, 2003, "Inmate Request for

21  Interview" form and Correctional Counselor Cain's response.

22          On April 22, 2004, plaintiff received a Notice of Return from the Lassen County

23  Superior Court regarding his resubmitted petition for name change.  Complaint, Exhibit D.  This

24  time, the notice stated that plaintiff's petition was being returned for the following reason:

25              Pursuant to Section 1279.5(b) of the California Code of Civil Procedure, no
            person imprisoned in the state prison and under the jurisdiction of the Director of
26              Corrections shall be allowed to file an application for change of name pursuant to

1    Section 1267 of the California Code of Civil Procedure, except as permitted at the
2    discretion of the Director of Corrections.

3    On or around July 16, 2004, plaintiff filed a habeas corpus petition with the

4    California Court of Appeal, Third Appellate District.  Complaint, Exhibit AB.  In this petition,

5    plaintiff complained that prison officials had not properly processed his requests to obtain a name

6    change.  Id.  On July 29, 2004, the Attorney General's Office filed an informal response to the

7    petition.  Complaint, Exhibit AC.  This informal response discussed plaintiff's attempts to obtain

8    a name change, as described above.  Id.  This letter also discussed the procedures by which

9    inmates may obtain name changes as described by Cal. Code Regs. tit. 15, § 3294.5.  The letter

10   concluded,

11           If the Warden, Regional Administrator or Assistant Deputy Director denies the
             request, then the inmate is entitled to a written rejection explaining the reason for
12           the denial.  (Id., §§ 3294.5(b) and (f).)
             Although this did not happen here, this oversight has now been corrected.
13           Petitioner's request for a name change has been forwarded to the warden and a
             copy of the warden's response denying plaintiff's request is attached to this
14           informal response.  Thus, petitioner has received all the relief that he is due
             pursuant to the statutes and regulations governing inmate name changes.
15           Therefore, this petition is moot and the Court should deny petitioner his requested
             relief.
16

17   Id.

18           On July 26, 2004, defendant Warden Runnels sent plaintiff a memorandum

19   describing his reasons for denying plaintiff's request for a name change.  Complaint, Exhibit AC.

20   Defendant Warden Runnels advised plaintiff that if he was dissatisfied with the decision, he

21   could utilize the inmate appeals process to address any further concerns he had regarding the

22   issue.  Defendant stated,

23           This memorandum is in response to your request to change your name.  Your
             request was inadvertently responded to by your assigned Correctional Counselor I
24           at the time of your original request.

25           I am denying your request.  There is no legitimate reason for me to approve the
             change of your legal name.  You have provided me with little information as to
26           why you are requesting to change your name and without a legitimate concern,

1   such as you being sentenced under an alias; I will not approve an unnecessary
    workload and security concerns associated with changing the name of an inmate.
2   As you may or may not be aware, to change your legal name would cause
    unnecessary workload to staff assigned to High Desert State Prison (HDSP).
3   Further, all of the records associated with your sentence and incarceration at
    HDSP are maintained under your legal name.  There are literally volumes of
4   documents and records that would have to be updated if I were to approve a
    change of your legal name and would only serve to increase the possibility of a
5   mistake being made in the classification process.

6   Based upon the aforementioned information, your request is denied.  If you are
    dissatisfied with my decision you may utilize the inmate appeals process to
7   address any further concerns you have regarding the issue.

8   Complaint, Exhibit AC.

9          Plaintiff did not file an any administrative grievances in response to the Warden's

10  July 26, 2004, memorandum.

11  IV.  Discussion

12         In his summary judgment motion, defendant renews his previously rejected

13  argument that this action should be dismissed for plaintiff's failure to exhaust administrative

14  remedies.  Defendant also argues that this action is moot.  The court will first address these

15  preliminary matters.

16         A.  Mootness and Failure to Exhaust Administrative Remedies

17         Defendant argues that this action is moot because in his summary judgment

18  motion, plaintiff states that he wishes to change his name to Yekonyah ben Yisrael Hawkins,

19  rather than the previously indicated Yahyl Yigdelyeh Hawkins.  The court disagrees.  Because

20  the names are so similar, plaintiff's statement that he wishes to change his name to Yekonyah

21  ben Yisrael Hawkins rather than the previously indicated Yahyl Yigdelyeh Hawkins does not

22  involve the change of a material fact.  Rather, the change in plaintiff's proposed new name is

23  ministerial and has no bearing on the outcome of this action.  Defendant's argument that this

24  action is moot based on  the change of this fact is without merit.

25         On January 11, 2006, the court denied defendant's motion to dismiss for failure to

26  exhaust administrative remedies.  In his summary judgment motion, defendant renews this

8

1    argument based on the recent Supreme Court decision of <u>Woodford v. Ngo</u>, ___ U.S. ___, 126 S.

2    Ct. 2378 (2006) and the change in plaintiff's proposed new name contained in his summary

3    judgment motion.

4              42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to

5    prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in

6    any jail, prison, or other correctional facility until such administrative remedies as are available

7    are exhausted."  In order for California prisoners to exhaust administrative remedies, they must

8    proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

9    CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and

10   4) third level appeal to the Director of the California Department of Corrections.  <u>Barry v.</u>

11   <u>Ratelle</u>, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A

12   final decision from the Director's level of review satisfies the exhaustion requirement.  <u>Id.</u> at

13   1237-38.

14             In <u>Booth v. Churner</u>, 121 S. Ct. 1819 (2001) the Supreme Court held that inmates

15   must exhaust administrative remedies, regardless of the relief offered through administrative

16   procedures.  121 S. Ct. at 1825.  Therefore, inmates seeking money damages must completely

17   exhaust their administrative remedies.  42 U.S.C. § 1997e(a) provides that no action shall be

18   brought with respect to prison conditions *until* such administrative remedies as are available are

19   exhausted.  <u>McKinney v. Carey</u>, 311 F.3d 1198 (9th Cir. 2002).

20             In the original motion to dismiss, defendants argued that plaintiff did not exhaust

21   administrative remedies because he failed to file any grievances following his receipt of

22   defendant Warden Runnels' July 26, 2004, memorandum denying his request for a name change.

23   The court denied defendant's motion on grounds that prison officials had failed to follow their

24   own procedures in responding to plaintiff's grievances.  <u>See</u> <u>Underwood v. Wilson</u>, 151 F.3d

25   292, 295 (5th Cir. 1998).  The October 31, 2005, findings and recommendations stated, in

26   relevant part,

On November 5, 2003, plaintiff correctly submitted a request for a name change to the Warden. The regulations required that defendant Warden Runnels respond to this request with a statement of reasons for either granting or denying the request. This did not happen. Instead, Correctional Counselor Cain advised plaintiff that if he was changing his name legally through the court system, he could proceed. However, plaintiff could not proceed through the courts because he did not have a response from defendant Warden Runnels, as required by the regulations.

Plaintiff then correctly filed an administrative appeal on January 6, 2004, requesting the name change and also describing his attempt to obtain a name change from the Warden, as required by § 3294.5. In this appeal, plaintiff described Correctional Counselor Cain's response to his request for a name change. Prison officials responded to this grievance by improperly advising plaintiff that he would have to go through the court to obtain a name change and that the CDC had no jurisdiction over this issue. See Brown v. Valoff, 422 F.3d 926, 935 (8th Cir. 2005) (no further exhaustion necessary when a prisoner is told that no remedies are available). This response did not address plaintiff's allegation that he had submitted a request for a name change to the Warden that had been improperly responded to.

Apparently based on the response to his administrative appeal, plaintiff then filed a petition for a name change in the Lassen County Superior Court, which was properly denied based on plaintiff's failure to obtain approval for the change from the CDC. The court need not discuss plaintiff's further attempts to obtain a name change.

By filing his January 6, 2004, administrative appeal, plaintiff properly attempted to exhaust the incorrect processing of his name change request addressed to defendant Warden Runnels. Had prison officials followed the regulations, plaintiff's appeal would have been granted and his request forwarded to defendant Warden. Instead, prison officials improperly responded that the CDC had no jurisdiction to consider plaintiff's request. Plaintiff then did what the appeal response advised, and filed his petition for a name change in Superior Court. Because prison officials did not follow their own regulations when they denied plaintiff's administrative appeal, the court finds that plaintiff exhausted his administrative remedies regarding this matter. See Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998), cert. denied, 526 U.S. 1133, 119 S. Ct. 1809 (1999) (a prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired). Prison officials cannot effectively thwart an inmate's attempt to exhaust a claim by failing to follow their own regulations and then later require him to begin the exhaustion process again once they decide to follow the regulations. Brown, supra.

October 31, 2005, findings and recommendations, pp. 6-7.

/////

/////

1    In Woodford v. Ngo, the Supreme Court held that a prisoner cannot satisfy the

2 exhaustion requirement by filing an untimely or otherwise procedurally defective administrative

3 grievance or appeal.  Defendant argues that because plaintiff could have administratively

4 appealed defendant Runnels' July 26, 2004, memorandum, he did not follow the proper

5 grievance procedures as required by Woodford v. Ngo, supra.  Defendant also suggests that

6 plaintiff failed to follow proper grievance procedures by not adequately explaining the grounds of

7 his name change request, as stated in defendant's July 26, 2004, memorandum.

8    Defendant's argument that plaintiff failed to follow the proper grievance

9 procedures, as required by Woodford v. Ngo is without merit.  By the time defendant Runnels

10 issued his July 26, 2004 memorandum, plaintiff had filed three actions in state court requesting

11 his name change based on misinformation given to him on at least two occasions by prison

12 officials regarding how to proceed with this request.  The mishandling of his request by prison

13 officials led to a significant delay in defendant Runnels' review of the request.  Defendant's

14 argument that plaintiff did not follow proper procedures by failing to appeal the July 26, 2004,

15 memorandum and by providing inadequate information in support of his request ignores

16 everything that led up to defendant's review of the request.  Had prison officials followed their

17 own procedures, they could have requested that plaintiff clarify his request at a much earlier time.

18 Prison officials cannot themselves repeatedly ignore their own procedures for the processing of

19 inmate grievances and then argue that the prisoner failed to exhaust administrative remedies by

20 not following these procedures.  Defendant's argument that plaintiff failed to exhaust

21 administrative remedies on this ground is without merit.

22    Defendant next argues that this action should be dismissed because plaintiff did

23 not exhaust administrative remedies as to the name Yekonyah ben Yisrael Hawkins.  As

24 discussed above, the differences between plaintiff's proposed new names are immaterial.  It is

25 clear that the outcome of plaintiff's request would not have been different had plaintiff identified

26 his proposed new name as Yekonyah ben Yisrael Hawkins rather than Yahyl Yigdelyeh

11

1   Hawkins.  Additional exhaustion is not required for ministerial changes to the factual basis of

2   claims.  Defendant's argument that plaintiff failed to exhaust administrative remedies on this

3   ground is without merit.

4                  B.  <u>First Amendment and RLUIPA</u>

5            Plaintiff's summary judgment motion appears to address both of his legal claims.

6   Although defendant does not specifically discuss the First Amendment or RLUIPA, the court will

7   construe his motion as addressing both claims.

8            At the outset, the court must clarify plaintiff's claims against defendant Runnels.

9   As discussed above, the first step in the name change process for inmates is obtaining approval

10  from the Warden.  The Warden's recommendation is then reviewed by the Institutions Division

11  Regional Administrator or the Assistant Deputy Director.  Only if the Institutions Division

12  Regional Administrator or Assistant Deputy Director agree with a Warden's approval of such a

13  request will a court consider the request.  Therefore, the denial of a name change request by a

14  warden effectively prevents a prisoner from legally changing his name.

15           The court also clarifies that plaintiff is alleging that defendant denied plaintiff's

16  request to *legally change* his name.  The Ninth Circuit previously found that a Muslim inmate

17  was entitled to *use* both his religious name and his commitment name on correspondences, on

18  legal documents and in his daily affairs.  <u>Malik v. Brown</u>, 16 F.3d 330, 334 (9th Cir. 1994).  In the

19  instant case, plaintiff is not alleging that defendant denied his request to merely use his religious

20  name in conjunction with his commitment name.

21           In his August 7, 2006, opposition to defendant's motion, plaintiff states that he is

22  not seeking the "eradiction" of his commitment name from his central file.  August 7, 2006,

23  opposition, p. 28.  A claim by plaintiff that he is seeking permission to use his religious name in

24  conjunction with his commitment name is different from the claim on which this action has been

25  proceeding, i.e. that defendant, in effect, thwarted his attempts to legally change his name.

26  Plaintiff's claim that he has been refused permission to use both his religious and commitment

1  name should be pursued in a different action.

2         A. <u>First Amendment</u>

3         The First Amendment to the United States Constitution provides that Congress

4  shall make no law respecting the establishment of religion, or prohibiting the free exercise

5  thereof.  U.S. Const., amend. I.  The United States Supreme Court has held that prisoners retain

6  their First Amendment rights, including the right to free exercise of religion.  <u>O'Lone v. Estate of</u>

7  <u>Shabazz</u>, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987).  The Court has also recognized that

8  limitations on a prisoner's free exercise rights arise from both the fact of incarceration and from

9  valid penological objectives.  <u>Id.</u>; <u>McElyea v. Babbit</u>, 833 F.2d 196, 197 (9th Cir. 1987).  "In

10  order to establish a free exercise violation, [plaintiff] must show the defendants burdened the

11  practice of his religion by preventing him from engaging in conduct mandated by his faith."

12  <u>Freeman v. Arpaio</u>, 125 F.3d 732, 736 (9th Cir. 1997).

13         In the instant case, plaintiff has not met his burden of demonstrating that taking a

14  religious name is mandated by his faith.  In his August 7, 2006, opposition, plaintiff states,

15         As we Israylites or Hebrew descents know, a name is much more than just what
       someone or something is called.  The concept of a name denotes essential being; a

16         name is permanently bound together with existence; everything that exists has a
       name.  In scriptural thought, a name reveals the essence of personality.  It's the

17         expression of the innermost being.  Hence, a change of name accompanies a
       change in character.  To speak or act in someone's name is to act as the

18         representative of that person, and hence to participate in his authority.

19  August 7, 2006, opposition, p. 7.

20         Plaintiff's explanation for why he wants to change his name does not demonstrate

21  that the name change is mandated by the Hebrew Israelite faith.  Accordingly, defendant is

22  entitled to summary judgment on this ground.

23         In their summary judgment motion, defendant also argues that he had a legitimate

24  penological reason for denying plaintiff's request for a name change.  The court need not reach

25  \\\\\

26  \\\\\

1  this argument because plaintiff has not demonstrated that his name change was religiously

2  mandated.[2]

3          Accordingly, for the reasons discussed above, the court recommends that

4  defendant be granted summary judgment as to plaintiff's First Amendment claim.

5          B.  RLUIPA

6          Section 3 of RLUIPA provides in relevant part, "[n]o government shall impose a

7  substantial burden on the religious exercise of a person residing in or confined to an

8  institution...even if the burden results from a rule of general applicability," unless the government

9  establishes that the burden furthers "a compelling governmental interest," and does so by "the

10 least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2).  RLUIPA defines "religious exercise"

11 to include "any exercise of religion, whether or not compelled by, or central to, a system of

12 religious belief." 42 U.S.C. § 2000cc(5)(7)(A).

13         Under RLUIPA, plaintiff bears the initial burden of going forward with evidence

14 to demonstrate a prima facie claim that defendant's refusal to permit him to change his name

15 constitutes a substantial burden on the exercise of his religious beliefs.  Warsoldier v. Woodford,

16 418 F.3d 989, 994 (9th Cir. 2005), citing 42 U.S.C. § 2000cc-2(b).  If plaintiff establishes the

17

18         [2]  Had plaintiff met his burden of demonstrating that his name change was religiously
   mandated, the court would find that defendant had not met his burden of demonstrating a
19 legitimate penological interest for denying plaintiff's request.  Defendant argues that even had he
   granted plaintiff's request, a court would have denied plaintiff's petition to change his name
20 because prisoners required to register as sex offenders, as is plaintiff, are not allowed to change
   their names unless doing so would not adversely affect public safety.  See Cal. Code Civ. Pro. §
21 1279.5(d).  The problem with this argument is that this is not the reason defendant denied
   plaintiff's request.  See Bradley v. Hall, 64 F.3d 1276, 1280 (9th Cir. 1995)(citing Casey v. Lewis,
22 4 F.3d 1516, 1520-21 (9th Cir. 1993)(prison officials must put forward some evidence that the
   interest put forward is the *actual* reason for the challenged conduct).
23         Defendant denied plaintiff's request because of the administrative burden imposed
   as a result of having to change plaintiff's prison records.  This argument is not well supported
24 because the regulations suggest that the only administrative consequence of a legal name change
   by a prisoner is that the mailroom and visiting room staff are required to update their records.
25 Cal. Code Regs. tit. 15, § 3294.5(h).  The prisoner's commitment name remains on all
   departmental records and continued to be used on all departmental records.   Cal. Code Regs. tit.
26 15, § 3294.5(I).

1   prima facie case of a substantial burden, on which he bears the burden of persuasion, defendant

2   shall bear the burden of persuasion to prove that any substantial burden on plaintiff's exercise of

3   his religious beliefs is both "in furtherance of a compelling governmental interest" and the "least

4   restrictive means of furthering that compelling governmental interest." Id., quoting 42 U.S.C. §

5   2000cc-1(a); § 2000cc-2(b).

6          "Although RLUIPA does not define what constitutes a 'substantial burden' on

7   religious exercise, see 42 U.S.C. § 2000cc-5, in the context of a land use suit brought under

8   RLUIPA, we have explained 'for a land use regulation to impose a "substantial burden," it must

9   be "oppressive" to a "significantly great" extent.  That is, a "substantial burden" on "religious

10  exercise" must impose a significantly great restriction or onus upon such exercise,' San Jose

11  Christian Coll. v. City of Morgan Hill, 360 F. 3d 1024, 1034 (9th Cir. 2004)."  Warsoldier v.

12  Woodford, 418 F.3d at 995.

13         In the instant case, plaintiff has not met his burden of demonstrating that

14  defendant's refusal to permit him to change his name constitutes a substantial burden on the

15  exercise of his religious beliefs.  Plaintiff's explanation contained in his opposition as to the

16  significance of a name change does not demonstrate that his inability to change his name

17  imposed a significantly great restriction upon the exercise of his religion.  Plaintiff's explanation

18  for his name change does no more than indicate that plaintiff would feel better about himself if

19  the name change were to be allowed.  In no way does plaintiff indicate, for example, that he will

20  not be permitted to participate in religious ceremonies with his given name, or that an unchanged

21  name would subject him to ostracism from his co-believers, or that he cannot "rise through the

22  ranks" of his religion, whatever those ranks may be.  Accordingly, because plaintiff has not met

23  his initial burden, his motion for summary judgment as to this claim should be denied and

24  defendant's motion should be granted.

25  \\\\\

26  \\\\\

1         Accordingly, IT IS HEREBY RECOMMENDED that:

2         1.  Plaintiff's February 23, 2006, summary judgment motion be denied;

3         2.  Defendant's July 21, 2006, cross-motion for summary judgment be granted.

4         These findings and recommendations are submitted to the United States District

5   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

6   days after being served with these findings and recommendations, any party may file written

7   objections with the court and serve a copy on all parties.  Such a document should be captioned

8   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

9   shall be served and filed within ten days after service of the objections.  The parties are advised

10  that failure to file objections within the specified time may waive the right to appeal the District

11  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12  DATED: 8/23/06

13                                    /s/ Gregory G. Hollows

14                                 GREGORY G. HOLLOWS
                                UNITED STATES MAGISTRATE JUDGE

15  ggh:kj
   sc2586.dis

16

17

18

19

20

21

22

23

24

25

26