IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BYRON SCOTT,

      Plaintiff,                    No. CIV S-04-2586 LKK GGH P

    vs.

CALIFORNIA SUPREME COURT, et al.,

      Defendants.              <u>FINDINGS & RECOMMENDATIONS</u>

                               /

I. <u>Introduction</u>

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA). This action is proceeding on the original complaint filed December 6, 2004. Plaintiff alleges that defendant Warden Runnels violated his First Amendment rights and RLUIPA by denying his request to change his name.

        Pending before the court is defendant's summary judgment motion filed June 28, 2007. On July 16, 2007, plaintiff filed a pleading titled "cross-motion for summary judgment and opposition to defendants' motion for summary judgment." In the September 7, 2007, opposition to the cross-motion, defendant observes that plaintiff's cross-motion does not include a statement of undisputed facts as required by Local Rule 56-260(a). Defendant requests that the

court deny the cross-motion on this ground.

In his October 5, 2007, reply to defendant's opposition, plaintiff states that in his cross-motion he stated that he was adopting the undisputed facts set forth in the August 23, 2006, findings and recommendations. Page 3 of the cross-motion contains a section titled "Statement of Facts," which states "[t]o be concise, plaintiff adopts the undisputed facts set forth in the court's finding and recommendations filed August 23, 2006, and October 31, 2005."[1] While not a model of clarity, the court finds that plaintiff, a pro se prisoner, has complied with Local Rule 56-260(a).

II. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to

---

[1] On October 31, 2005, the court recommended that defendant's motion to dismiss be denied. On August 23, 2006, this court recommended that plaintiff's first summary judgment motion be denied and defendant's first summary judgment motion be granted on grounds that plaintiff had not demonstrated that his faith mandated a name change. On September 28, 2006, the Honorable Lawrence K. Karlton declined to adopt the findings and recommendations on grounds that defendant had not moved for summary judgment on this ground. This issue has now been fully briefed in the pending motions.

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

1  56(e) advisory committee's note on 1963 amendments).

2  In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On March 25, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

III. Discussion

A. Undisputed Facts

Plaintiff is a member of a church called House of Yahweh.[2]  Plaintiff requested permission to legally change his name to Yahyl Yigdalyah Hawkins for religious reasons. Defendant Warden Runnels denied this request.

---

[2] In his pleadings and at his deposition, plaintiff failed to identify the specific faith/church to which he belongs. However, attached as exhibits to his cross-motion are letters addressed to him from members of the House of Yahweh. Plaintiff does not dispute that this is his church, but states that he has been instructed by his church not to implicate the church in this litigation.

B. <u>Analysis</u>

*First Amendment*

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. U.S. Const., amend. I. The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987). The Court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and from valid penological objectives. <u>Id.</u>; <u>McElyea v. Babbit</u>, 833 F.2d 196, 197 (9th Cir. 1987). "In order to establish a free exercise violation, [plaintiff] must show the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith." <u>Freeman v. Arpaio</u>, 125 F.3d 732, 736 (9th Cir. 1997).

To establish a violation of the free exercise clause, plaintiff must demonstrate a "substantial burden on the observation of a central belief or practice...," <u>Hernandez v. Commissioner of Internal Revenue</u>, 490 U.S. 680, 699, 109 S.Ct. 2136 (1989). Any challenge under the free exercise clause also requires plaintiff to demonstrate that the interference with his religious practice impacts a central religious belief or practice, one that is "mandated by his faith." <u>Freeman v. Arpaio</u>, 125 F.3d 732, 736 (9th Cir. 1997). While the court does not interpret "mandated by faith" as requiring a written command etched into a tablet or book, it does require evidence that the religion considers the desired practice to be central to its theology. It must be more than a recommended practice else the term "mandated by faith" loses all meaning.

Defendants move for summary judgment on grounds that plaintiff's name change is not mandated by his faith. Defendants argue that at his deposition, when asked whether other members of the church had the last name Hawkins, plaintiff responded,

> Not all. Some do, but not all. A lot of times they just do that out of respect. It's not a mandatory thing, should I say, for a person to do that, but for–to partake of his last name, should I say, but to change your name in itself it is a common

1　　　　　　　practice for them to do that because the change represents the changing of self.
2　　　　　　　It's a symbolic meaning of changing one self.

3　Defendants' Exhibit D.

4　　　　　In his declaration attached to his cross-motion opposition, plaintiff states that he

5　"misspoke" when he testified at his deposition that changing his name was not mandated by his

6　religion.  Plaintiff's declaration, ¶ 1.  Plaintiff states that "only devout believers who 'fully'

7　commit to the upholding of the faith's dogma are those who change their names, to honor the

8　creator and/or their heritage, culture, etc."  Id., ¶ 4.  Plaintiff states that the name change is a

9　"requirement that his central to the religious faith."  Id., ¶ 5.  Plaintiff goes on to state,

10　　　　　　　To deny plaintiff his religious right to change his name would be to strip him of
　　　　　　　　his right to spiritual and moral upliftment, condemning him to "hell fire" in spite
11　　　　　　　of all his efforts to improve himself mentally, spiritually, physically and
　　　　　　　　emotionally.
12

13　Id., ¶ 11.

14　　　　　In his declaration, plaintiff states that his exhibits A-G show that changing his

15　name "denotes adoption into the Yahweh Family."  Id., ¶ 8.

16　　　　　Exhibit A is a letter addressed to plaintiff from the House of Yahweh church

17　which states, in relevant part,

18　　　　　　　In reference to your questions, You have done nothing wrong by naming yourself
　　　　　　　　Yahyl.  Some people do this.  Most people ask Pastor to name them, so that they
19　　　　　　　can have the joy of being named by him; that's all.

20　Plaintiff's Opposition, Exhibit A.

21　　　　　Exhibit B is another letter addressed to plaintiff from the House of Yahweh

22　stating, in relevant part,

23　　　　　　　In reference to your questions, we will submit your name to Pastor Yisrayl
　　　　　　　　Hawkins so that he can decide a name for you.  We are sure that he will give you a
24　　　　　　　name that will be one that you will be very pleased with.

25　Plaintiff's Opposition, Exhibit B.

26　\\\\\

6

1          Exhibit C includes what appear to be pages from a religious book discussing the

2 Yahweh religion.  Plaintiff has apparently underlined a section of page 414 which states, "My

3 sons call themselves "Hawkins" as my true son would do."

4          Exhibits D, E and F are what appear to be pages from another religious book

5 discussing the Yahweh religion.  Exhibits D, E and F contain no information regarding whether

6 name changes are required by plaintiff's church.

7          Exhibit G includes pages from an article titled "A Short But Precise History of the

8 Name of Hawkins."  This exhibit contains no information regarding whether name changes are

9 required by plaintiff's church.

10          The court also observes that attached to plaintiff's opposition as exhibit L is the

11 declaration of inmate Aaron Collins.  Inmates Collins states, in relevant part,

> 4. My interpretation of the Hebrew faith doctrinal teachings as outlined throughout the exhibits of plaintiff's objections, mandates an importance of change of name to be of the Hawkins family unit in order to obtain certain benefits for spiritual enlightenment, prosperity and eternal life;
> 5. To restrict him from an opportunity would be an endangerment to his spiritual welfare, leading to emotional impairment.

16          In their opposition, defendants object to exhibits A-H on grounds that they lack

17 foundation and contain hearsay.  Defendants also object to these exhibits on grounds that they are

18 irrelevant because they do not demonstrate that the name change is required by plaintiff's church.

19 Plaintiff's exhibits A-H clearly lack foundation.  More importantly, these documents do not

20 demonstrate that plaintiff's name change is mandated by his church.  Plaintiff himself testified at

21 his deposition that the name change was not mandated by his church.  Plaintiff's statement in his

22 declaration that the name change is a "requirement" of his church is contradicted by his

23 deposition testimony and not supported by any of the exhibits.  See U.S. v. TRW Rifle, etc., 447

24 F.3d 686, 692 (9th Cir. 2006) (one cannot submit a declaration inconsistent with a deposition

25 statement to avoid summary judgment).

26 \\\\\

In their reply, defendants also object to the declaration of inmate Collins on grounds that his declaration contains no foundation to establish that inmate Collins is qualified to offer this opinion. This objection has merit. Accordingly, the court will disregard the Collins declaration. In any event, inmate Collins does not state that plaintiff's church mandates that he change his name.

The court observes that both parties have focused their briefing on plaintiff's desire to change his last name to Hawkins. Neither party has specifically focused on plaintiff's desire to change his first and middle names. However, after reviewing the record, the court finds no admissible evidence supporting plaintiff's claim that his church considers the proposed name changes central to its theology. While plaintiff has presented evidence demonstrating that the church is willing to accommodate plaintiff's request for a name change, there is no admissible evidence demonstrating that this practice is even recommended.

The court acknowledges that in Malik v. Brown, 16 F.3d 330 (9th Cir. 1994) the Ninth Circuit found that the adoption of a Muslim name by a prisoner "is an expression of his religious faith" entitled to First Amendment protection. In Malik, the Ninth Circuit did not find that use of a Muslim name was "mandated." Nevertheless, it is not reasonable to infer from Malik that any proposed name change by an inmate based on any religious belief must be accommodated. Adoption of a religious name is commonly known as central to the practice of the Muslim religion, whereas adoption of a religious name by a member of the House of Yaweh is not. It is plaintiff's burden to establish that adoption of a religious name is central to his theology and he has not met this burden. Accordingly, defendant is entitled to summary judgment as to plaintiff's First Amendment claim. Plaintiff's summary judgment motion should be denied.

Defendant goes on to argue that even if plaintiff's name change was mandated by his religion, defendant's decision comports with the First Amendment. Defendant goes on to discuss the four factors set forth in Turner v. Safley, 482 U.S. 78, 89-90, 107 S.Ct. 2254 (1987)

which are applicable to free exercise challenges to prison policies.  Because it is clear that plaintiff's name change is not mandated by his church, the court need not address these factors.

*RLUIPA*

Section 3 of RLUIPA provides in relevant part, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution...even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling governmental interest," and does so by "the least restrictive means."  42 U.S.C. § 2000cc-1(a)(1)(2).  RLUIPA defines "religious exercise" to include "any exercise of religion," whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc(5)(7)(A).

Under RLUIPA, plaintiff bears the initial burden of going forward with evidence to demonstrate a prima facie claim that defendant's refusal to permit him to change his name constitutes a substantial burden on the exercise of his religious beliefs.  Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005), citing 42 U.S.C. § 2000cc-2(b).  If plaintiff establishes the prima facie case of a substantial burden, on which he bears the burden of persuasion, defendant shall bear the burden of persuasion to prove that any substantial burden on plaintiff's exercise of his religious beliefs is both "in furtherance of a compelling governmental interest" and the "least restrictive means of furthering that compelling governmental interest."  Id., quoting 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b).

"Although RLUIPA does not define what constitutes a 'substantial burden' on religious exercise, see 42 U.S.C. § 2000cc-5, in the context of a land use suit brought under RLUIPA, we have explained 'for a land use regulation to impose a "substantial burden," it must be "oppressive" to have a "significantly great" extent.  That is, a "substantial burden" on "religious exercise" must impose a significantly great restriction or onus upon such exercise,' San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)."  Warsoldier v. Woodford, 418 F.3d at 995.

In his summary judgment motion, plaintiff argues that defendant's refusal to grant his request to legally change his name imposed a substantial burden on the exercise of his religion because it "exerted 'substantial pressure' on [the plaintiff] to modify his behavior and to vindicate his beliefs." Cross-motion/Opposition, p. 13: 18-22.  Plaintiff argues that his exhibits submitted in support of his cross-motion/opposition as well as in support of other pleadings filed in this case demonstrate that his church requires that all committed devotees change their names. Id., p. 14: 17-24.

The court has reviewed the record and finds no evidence demonstrating that plaintiff's practice of his religion is substantially burdened because he cannot legally change his name.  Plaintiff does not otherwise explain how he was required to modify his behavior as a result of not legally changing his name.

Plaintiff's explanation for his name change indicates that he would feel better about himself if the name change were allowed.  In no way does plaintiff indicate, for example, that he will not be permitted to participate in religious ceremonies with his given name, or that an unchanged name would subject him to ostracism from his co-believers, or that he cannot "rise through the ranks" of his religion.  Accordingly, because plaintiff has not met his initial burden, his motion for summary judgment as to his claim should be denied and defendant's motion should be granted.[3]

Defendant also moves for summary judgment on qualified immunity grounds. Because the court finds that defendant is entitled to summary judgment on the merits, the court need not address the issue of qualified immunity.

\\\\\

\\\\\

---

[3] In his cross-motion/opposition, plaintiff argues that his ability to practice his religion had been burdened in other respects.  However, plaintiff has presented no evidence demonstrating that these other alleged burdens to his practice were as a result of his not being able to legally change his name.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's July 16, 2007, summary judgment motion be denied;

2. Defendant's June 28, 2007, summary judgment motion be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 12/19/07

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

scott.sj(2)