IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BYRON SCOTT,

      Plaintiff,                      No. CIV S-04-2586 LKK GGH P

  vs.

CALIFORNIA SUPREME COURT, et al.,

      Defendants.                 FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA). This action is proceeding on the original complaint filed December 6, 2004. Plaintiff alleges that defendant Warden Runnels violated his First Amendment rights and RLUIPA by denying his request to change his name.

        On December 20, 2007, this court recommended that plaintiff's summary judgment motion be denied and defendant's summary judgment motion be granted. On March 12, 2008, the Honorable Lawrence K. Karlton declined to adopt the findings and recommendations and referred the matter back. Judge Karlton found that after the findings and recommendations were issued, the Ninth Circuit decided Shakur v. Schriro, 514 F.3d 878 (9th

1

Cir. 2008) which changed the standard by which the court considers First Amendment claims.

Pending before the court are renewed cross-motions for summary judgment. Plaintiff filed his motion on April 7, 2008. Defendant filed his motion on May 5, 2008. After carefully reviewing the record, the court recommends that plaintiff's motion be denied and defendant's motion be granted.

II. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

\\\\\

        If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

        In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

        In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On March 25, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

III. Discussion

    A. Undisputed Facts

Plaintiff is a member of a church called House of Yahweh. Plaintiff requested permission to legally change his name to Yahyl Yigdalyah Hawkins for religious reasons. On July 26, 2004, defendant Warden Runnels denied this request. In the decision denying the request defendant stated,

> This memorandum is in response to your request to change your name. Your request was inadvertently responded to by your assigned Correctional Counselor I at the time of your original request.
>
> I am denying your request. There is no legitimate reason for me to approve the change of your legal name. You have provided me with little information as to why your are requesting to change your name and without a legitimate concern, such as you being sentenced under an alias. I will not approve an unnecessary workload and security concerns associated with changing the name of an inmate. As you may or may not be aware, to change your legal name would cause unnecessary workload to staff assigned to High Desert State Prison (HDSP). Further, all of the records associated with your sentence and incarceration at HDSP are maintained under your legal name. There are literally volumes of documents and records that would have to be updated if I were to approve a change of your legal name and would only serve to increase the possibility of a mistake being made in the classification process.
>
> Based upon the aforementioned information, your request is denied. If you are dissatisfied with my decision, you may utilize the inmate appeals process to

address any further concerns you have regarding the issue.

Plaintiff's April 7, 2008, summary judgment motion, Exhibit A.

Under California law, prisoners must obtain permission from the Warden before they may legally change their names. The procedures by which inmates may obtain name changes are contained in Cal. Code Regs. tit. 15, § 3294.5 which provides, in relevant part,

> (a) All inmate or parolee requests for a legal name change shall initially be reviewed by the Warden or Regional Parole Administrator who shall either recommend approval for a legal name change or deny the request for a legal name change.
>
> (b) If the request is denied, the Warden or Regional Parole Administrator shall respond to the inmate or parolee in writing with the reasons for denial. A copy of the denial shall be placed in the miscellaneous section of the inmate/parolee's central file.
>
> (c) If the Warden finds reasons that exist to warrant an inmate's request for a name change, then the Warden shall forward the request to the Institutions Division Regional Administrator, along with a memorandum listing the reasons for recommending approval. A copy of the memorandum shall be placed in the miscellaneous section of the inmate's central file.
>
> *****
>
> (e) If the Institutions Division Regional Administrator or the Assistant Deputy Director, P & CSD, agrees with the recommendation to approve the request for a name change of an inmate or parolee, a letter shall be forwarded to the court explaining why the Department is recommending approval for a name change, along with the inmate/parolee's request. A copy of the letter shall be placed in the miscellaneous section of the inmate/parolee's central file.
>
> (f) If the Institutions Division Regional Administrator or the Assistant Deputy Director, P & CSD, denies the request for a name change of an inmate or parolee, a letter shall be forwarded to the inmate or parolee with the reasons for denial. A copy of the letter shall be placed in the miscellaneous section of the inmate/parolee's central filed.
>
> (g) Upon receiving final approval from the court with the ordered name change and receiving departmental approval, the Correctional Case Records Manager shall notify the facility mailroom and visiting room of the name change if the offender is incarcerated; or shall notify the agent of record if the offender is on parole. The court order shall be placed in the miscellaneous section of the inmate/parolee's central file, along with other documents related to the request for a name change.
>
> (h) The mailroom and visiting room staff of the facility shall update their records to reflect the additional name of the inmate.

(i) The original commitment name of the inmate or parolee shall remain on all departmental records and shall continue to be used on all departmental records.

*****

(l) If the court ordered name change is received without departmental approval, this clearly indicates that the inmate/parolee has not followed proper procedure to legally change his/her name. In this case, the Warden or Regional Parole Administrator shall notify the issuing court in writing that the name change cannot legally be changed without the Director's approval pursuant to the Code of Civil Procedure, Section 1279.5. A copy of the letter shall be placed in the miscellaneous section of the inmate/parolee's central and a copy shall be provided to the inmate/parolee.

Cal. Code Civ. Pro. § 1279.5(b) provides that no person imprisoned in the state prison and under the jurisdiction of the Director of Corrections shall be allowed to file an application for change of name pursuant to Section 1276 except as permitted at the discretion of the Director of Corrections.

### B. First Amendment

Defendant argues that he is entitled to qualified immunity. Determining whether a defendant is entitled to qualified immunity involves a sequential three step analysis: 1) viewing the facts in the light most favorable to plaintiff whether there was a constitutional violation; 2) whether the constitutional right was well established; and 3) whether it was unreasonable for the official to believe his actions were constitutional. Saucier v. Katz, 533 U.S. 194, 200-201, 121 S. Ct. 2151, 2155-2156 (2001).

Accordingly, the court first considers, viewing the facts in light most favorable to the plaintiff, whether there was a constitutional violation.

"Prisoners 'do not forfeit all constitutional protections by reason of their conviction and confinement.'" Shakur v. Schriro, 514 F.3d 878, 883 (9th Cir. 2008)(quoting Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861 (1979)). "Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" Id. at 883-884 (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987)). "However, '"[l]awful incarceration brings about the necessary withdrawal or

1  limitation of many privileges and rights, a retraction justified by the considerations underlying
2  our penal system."'"" Id. at 884 (internal citations omitted).

3  "When a prison regulation impinges on inmates' constitutional rights, the
4  regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley,
5  482 U.S. 78, 89, 107 S.Ct. 2254 (1987). Turner set forth four factors to be balanced in
6  determining whether a prison regulation is reasonably related to legitimate penological interests:
7  1) whether there is a valid, rational connection between the prison regulation and the legitimate
8  government interest put forward to justify it; 2) whether there are alternative means of exercising
9  the right that remain open to prison inmates; 3) whether accommodation of the right would
10 impact guard and other inmates, and the allocation of prison resources generally; and 4) whether
11 there is an absence of ready alternatives versus the existence of obvious, easy alternatives.
12 Turner, 482 U.S. at 89-90, 107 S.Ct. 2254.

13 In the December 20, 2007, findings and recommendations, this court found that
14 "[t]o establish a violation of the free exercise clause, plaintiff must demonstrate a 'substantial
15 burden on the observation of a central belief or practice.'" December 20, 2007, findings and
16 recommendations, p. 5 (quoting Hernandez v. Commissioner of Internal Revenue, 490 U.S. 680
17 (1989)). This court recommended that defendant's summary judgment motion be granted
18 because plaintiff had failed to demonstrate that changing his name was a central belief or
19 mandated by his religion. For this reason, the court did not go on to apply the Turner factors to
20 defendant's decision to deny plaintiff's request for a name change.

21 In Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008) the Ninth Circuit disavowed
22 the objective centrality test. The Ninth Circuit recognized that its earlier line of cases ran afoul
23 of the Supreme Court's warning that "'[i]t is not within the judicial ken to question the centrality
24 of particular beliefs or practices to a faith.'" Shakur, 514 F.3d at 884 (quoting Hernandez v.
25 C.I.R., 490 U.S. 680, 699, 109 S.Ct. 2136 (1989)). Instead, the relevant inquiry is whether the
26 belief at issue is "sincerely held" and "rooted in religious belief." Shakur, 514 F.3d at 884.

In his March 12, 2008, order, Judge Karlton found that plaintiff sincerely believed that name changes were consistent with his faith. March 12, 2008, order at 2. Given this holding, the court referred the matter back to the undersigned to apply the Turner factors to defendant's decision and to consider whether defendant was entitled to qualified immunity.

In the pending motion, defendant moves for summary judgment on grounds that the decision denying plaintiff's request to change his name was based on legitimate penological interests. In support of this argument, defendant relies on the statement of undisputed facts and evidence submitted in support of the original summary judgment motion filed June 28, 2007, and evidence submitted in support of the pending motion.

As to the first Turner factor, defendant argues that his decision denying plaintiff's request to change his name was motivated by the legitimate governmental interests of preserving institutional security, promoting fiscal responsibility and reducing unnecessary workload. In support of this argument, defendant refers to the declaration of D. Hanlon, the Case Record Manager at High Desert State Prison (HDSP). D. Hanlon states, in relevant part,

> 3. Pursuant to the Department Operations Manual (DOM), section 73010 the commitment name shall be recorded as reflected on the original Abstract Judgement by which the inmate was delivered to the custody of the Department. Only the commitment name is used in conjunction with the CDCR number until that number is discharged.
>
> 4. The commitment name and CDCR number are entered into the Department's Offender Base Information System (OBIS) computer system. This is a statewide automated tracking system for offender information. Commitment data is entered into OBIS and a record is established for each case number for which an offender is sentenced to prison.
>
> 5. Changing the name on an active commitment midstream could cause tracking and identification problems for the Department. HDSP staff would have difficulty tracking the plaintiff if the name on his central file was different from the original commitment name in the computer system. This could prevent documents from being properly filed in plaintiff's central, mail, medical, visitation, education, and administrative files. As a result, this could present a security risk.
>
> 6. When an inmate legally changes his name, numerous documents have to be changed to reflect the new name. New photographs need to be taken and new ID cards would have to be issued. This would take numerous hours utilizing several staff members and would be quite costly for the Department. This would increase

>
> the possibility of errors being made which could present a serious security risk. Errors could be made on the inmates classification documents causing him to be placed on the wrong yard which could lead to assaults or even escape.

Defendant's June 28, 2007, statement of undisputed facts, Exhibit C.

Defendant also argues that because plaintiff is a sex offender, the CDCR is required to keep plaintiff's location known to the Department of Justice at all times. Cal. Penal Code § 290(f). Defendant argues that checking two names, rather than one, would place an additional burden on the department and create the risk that plaintiff's information would not be properly reported.

Other than the burden involved in tracking sex offenders, the burdens defendant claims would be suffered were plaintiff allowed to change his name are equally applicable to every prisoner in California seeking to legally change their name. Were the court to find these reasons sufficient to deny plaintiff's request to change his name, it would be effectively finding that no prisoner in California could ever legally change his name. Such a finding would thwart California law, which clearly intends that prisoners can legally change their names under some circumstances.

More importantly, defendant's description of the burden that would be suffered were plaintiff allowed to change his name is based on the assumption that prison officials would be required to discontinue use of plaintiff's commitment name on their records. Well established case law provides prisoners are not allowed to discontinue use of their commitment names once they legally change their names for religious reasons.

In Malik v. Brown, 16 F.3d 330 (9th Cir. 1994) a Washington state prisoner legally changed his name to a Muslim name while in prison. 16 F.3d at 1331. The prison told the prisoner that he could send and receive mail using his commitment name only. Id. Applying the first Turner factor, the Ninth Circuit found that the state had a legitimate interest in the continued use of the inmate's committed name. Id. at 334. However, it found no legitimate penological interest in preventing the prisoner from using both his religious and commitment

9

1  names.  Id.  The Ninth Circuit agreed with other circuits addressing this issue "that allowing an
2  inmate to use both his religious and committed names 'is a reasonable middle ground between
3  absolute recognition of the plaintiff's Muslim names and the prison interests of order, security
4  and administrative efficiency.'"  Id., citations omitted.
5         Pursuant to Malik, were plaintiff allowed to legally change his name then prison
6  officials would most likely be required to allow plaintiff to use both his commitment and
7  religious name at least on correspondence, legal documents and in his daily affairs.  16 F.3d at
8  335.  In other words, prison officials would not be required to discontinue use of plaintiff's
9  commitment name.  Based on this clearly established law, the court does not find that defendant
10 has demonstrated a rational connection between his decision denying plaintiff's request to legally
11 change his name and the interests put forward to justify this decision.  Defendant has not
12 demonstrated that allowing plaintiff to use both his commitment and religious name would
13 impose a security or administrative burden.
14         Turning to the second Turner factor, defendant argues that plaintiff has alternative
15 means of practicing his religion.  Defendant argues that members of plaintiff's church are
16 allowed to meet for services and attend religious study groups.  See Defendant's June 28, 2007,
17 statement of undisputed facts, B.  Inmates of plaintiff church are provided with a diet that
18 substantially comports with their dietary requirement.  Id.
19         In addressing the second Turner factor, the Ninth Circuit in Malik found that
20 using both the religious and the committed name was a satisfactory alternative means for an
21 inmate to exercise his religion.  16 F.3d at 335.  In its analysis of the second Turner factor, the
22 Ninth Circuit did not consider whether the plaintiff generally had other alternative means of
23 practicing his religion, as did defendant in the pending motion.  Pursuant to Malik, the court
24 finds that whether plaintiff is able to perform other religious rituals is not material.  Because
25 defendant has not addressed whether allowing plaintiff to use both his commitment name and
26 religious name is a satisfactory alternative, the court finds that defendant has not met his burden

1  of demonstrating that plaintiff has satisfactory alternative means for practicing this aspect of his
2  religion.
3          As for the third Turner factor, defendant argues that allowing plaintiff to legally
4  change his name and use only his religious name would have placed too great a burden on the
5  California Department of Corrections and Rehabilitation (CDCR) and HDSP.  Because defendant
6  does not address what impact allowing plaintiff to use both his commitment and religious name
7  would have on CDCR and HDSP, the court does not find that defendant has met his burden of
8  demonstrating that accommodating plaintiff's request would have too great an impact on the
9  prison, etc.
10         As to the fourth Turner factor, defendant states that he is unaware of reasonable
11 alternatives.  Defendant does not address the reasonable alternative found in Malik, i.e. use of
12 both commitment and religious names.
13         For the reasons discussed above, the court finds that, viewing the facts in the light
14 most favorable to plaintiff, defendant violated his constitutional rights by denying his request to
15 legally change his name.
16         The outcome for qualified immunity does not necessarily depend on whether there
17 remain issues of fact with respect to the alleged constitutional violation.  The right allegedly
18 violated must have been clear to defendants *in the specific context of the case*.  Public officials
19 may be mistaken in their actions and still possess qualified immunity.  Jeffers v. Gomez, 267
20 F.3d 895, 910 (9th Cir 2001).  To determine whether the right allegedly violated was "clearly
21 established," the court must determine, in light of the specific context of the case, "whether it
22 would be clear to a reasonable officer that his conduct was unlawful in the situation he
23 confronted." Saucier, 533 U.S. at 202, 121 S.Ct. 2156.
24         Turning to the second qualified immunity factor, the court finds that when
25 defendant Runnels denied plaintiff's request to legally change his name in 2004, the law was
26 clearly established that prison officials were required to recognize both commitment and legally

changed religious names, at least for purposes of correspondence, legal documents and in daily affairs. Malik v. Brown, 16 F.3d 330 (9th Cir. 1994). However, the law was also clearly established that to establish a violation of the free exercise clause required demonstration that the observation of a central belief or practice of the plaintiff's religion had to be "mandated by his faith." Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997).

Turning to the third qualified immunity factor, the court finds that based on the law discussed above, a reasonable prison official would not have believed that denying plaintiff's request to change his name was unconstitutional. This is because, as discussed in the December 20, 2007, findings and recommendations, plaintiff's church did not consider the proposed name change central to its theology. While plaintiff has demonstrated that the church was willing to accommodate his name change, there is no admissible evidence that this practice was even recommended.

In his pending summary judgment motion, plaintiff again argues that changing his name was a central belief or practice of his religion. In support of this claim, plaintiff attaches as exhibits many of the documents he submitted in support of his first motion for summary judgment. For the reasons stated in the December 20, 2007, findings and recommendations, the court does not find that plaintiff has demonstrated that changing his name is either central to his theology or mandated by his faith.[1]

Because a reasonable official would not have believed that denying plaintiff's request to change his name was unconstitutional, defendant is entitled to qualified immunity.

As for plaintiff's claim for injunctive relief, defendant argues that this claim is moot. See Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993)

---

[1] As discussed above, in Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008), the Ninth Circuit disavowed the objective centrality test. Instead, the Ninth Circuit found that the relevant inquiry is whether the belief is "sincerely held" and "rooted in religious belief." Shakur, 514 F.3d at 884. At the time defendant Runnels denied plaintiff's request to legally change his name, the objective centrality test was the law.

(qualified immunity is only an immunity from a suit for damages, and does not provide immunity from suit for declaratory or injunctive relief). A case becomes moot if the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181 (1982).

It is undisputed that plaintiff is no longer incarcerated at HDSP. On November 30, 2007, he was transferred to Calipatria State Prison. See Exhibit A attached to defendant's summary judgment motion. Defendant Runnels is not the Warden at Calipatria. Defendant argues that if plaintiff wants to petition for a legal name change, he must now obtain permission from the Warden of Calipatria.

In essence, plaintiff seeks injunctive relief against an individual who is not named as a defendant in this action, i.e. the Warden of Calipatria. This court is unable to issue an order against individuals who are not parties to a suit pending before it. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969). Rather than based on mootness, the court recommends that defendant be granted summary judgment as to plaintiff's claim for injunctive relief because the court cannot order injunctive relief against the Warden of Calipatria.

For the reasons discussed above, the court recommends that defendant be granted summary judgment as to plaintiff's First Amendment claim.

*RLUIPA*

Section 3 of RLUIPA provides in relevant part, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution...even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)(2). RLUIPA defines "religious exercise" to include "any exercise of religion," whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc(5)(7)(A).

\\\\\

Under RLUIPA, plaintiff bears the initial burden of going forward with evidence to demonstrate a prima facie claim that defendant's refusal to permit him to change his name constitutes a substantial burden on the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005), citing 42 U.S.C. § 2000cc-2(b). If plaintiff establishes the prima facie case of a substantial burden, on which he bears the burden of persuasion, defendant shall bear the burden of persuasion to prove that any substantial burden on plaintiff's exercise of his religious beliefs is both "in furtherance of a compelling governmental interest" and the "least restrictive means of furthering that compelling governmental interest." Id., quoting 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b).

"Although RLUIPA does not define what constitutes a 'substantial burden' on religious exercise, see 42 U.S.C. § 2000cc-5, in the context of a land use suit brought under RLUIPA, we have explained 'for a land use regulation to impose a "substantial burden," it must be "oppressive" to have a "significantly great" extent. That is, a "substantial burden" on "religious exercise" must impose a significantly great restriction or onus upon such exercise,' San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)." Warsoldier v. Woodford, 418 F.3d at 995.

In his summary judgment motion, plaintiff argues that defendant's refusal to grant his request to legally change his name imposed a substantial burden on the exercise of his religion because it "exert[ed] 'substantial pressure' on [plaintiff] to modify his behavior and to violate his beliefs." Plaintiff's summary judgment motion, p. 7. Plaintiff argues that his exhibits submitted in support of his cross-motion/opposition as well as in support of other pleadings filed in this case demonstrate that his church requires that all committed devotees change their names.

The court has reviewed the record and finds no evidence demonstrating that plaintiff's practice of his religion is substantially burdened because he cannot legally change his name. Plaintiff does not otherwise explain how he was required to modify his behavior as a

result of not legally changing his name.

Plaintiff's explanation for his name change indicates that he would feel better about himself if the name change were allowed.  In no way does plaintiff indicate, for example, that he will not be permitted to participate in religious ceremonies with his given name, or that an unchanged name would subject him to ostracism from his co-believers, or that he cannot "rise through the ranks" of his religion.  Accordingly, because plaintiff has not met his initial burden, his motion for summary judgment as to his claim should be denied and defendant's motion should be granted.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's April 7, 2008, summary judgment motion be denied;

2. Defendant's May 5, 2008 summary judgment motion be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 07/17/08

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

scott.sj(3)